EXHIBIT ONE

UNITED STATES DEPARTMENT OF AGRICULTURE

BEFORE THE SECRETARY OF AGRICULTURE

| | | |
|---|---|---|
| Sun Valley Farms LLC, | ) | PACA Docket No. W-R-2018-149 |
| | ) | |
| Complainant | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Western Veg Produce Inc., | ) | |
| | ) | |
| Respondent | ) | Decision and Order |

## **Preliminary Statement**

Complainant instituted this reparation proceeding under the Perishable
Agricultural Commodities Act, 1930, as amended (7 U.S.C. §§ 499a-499s) (PACA); and
the Administrative Procedures under the PACA (7 C.F.R. §§ 47.1-47.49) (Administrative
Procedures), by filing a timely Complaint.  Complainant seeks a reparation award against
Respondent in the amount of $218,659.98 in connection with six truckloads of avocados
shipped in the course of interstate and commerce.

Copies of the Report of Investigation (ROI) prepared by the Department were
served upon the parties.  A copy of the Complaint was served upon the Respondent,
which filed an Answer thereto, denying liability to Complainant and asserting a
Counterclaim "in an amount as least as great as $30,000.00" for lost sales, lost
commissions and lost profits in connection with the six truckloads of avocados at issue in
the Complaint.  Complainant filed a reply to the Counterclaim denying liability to
Respondent.

The amounts claimed in both the Complaint and the Counterclaim exceed $30,000.00, and Respondent initially requested an oral hearing; however, Respondent subsequently withdrew its request, so the matter was converted to handling according to the documentary procedure provided in section 47.20 of the Administrative Procedures. (7 C.F.R. § 47.20.) Pursuant to this procedure, the verified pleadings of the parties are considered part of the evidence of the case, as is the Department's ROI. In addition, the parties were given the opportunity to file evidence in the form of verified statements and to file briefs. Complainant filed an Opening Statement, a Statement in Reply and a brief. Respondent filed an Answering Statement and a brief.

## Findings of Fact

1.      Complainant is a limited liability company whose post office address is P.O. Box 2020, Delano, CA 93216. At the time of the transactions involved herein, Complainant was licensed under the PACA.

2.      Respondent is a corporation whose post office address is P.O. Box 82217, Bakersfield, CA 93380. At the time of the transactions involved herein, Respondent was licensed under the PACA.

### Load 1

3.      On December 20, 2017, 1,760 25-lb. cartons of Hass avocados (32's, 36's, 40's, 48's, 60's, and 70's) were inspected at Bland Distributing, in Donna, Texas, and certified as meeting the requirements of the U.S. No. 1 grade on Federal-State Inspection Certificate TX-0274647. (Compl. Ex. 2 at 2.)

4.    Respondent assigned lot number SV-122017 to the avocados mentioned in Finding of Fact 3, which it resold on December 20, 2017.  (Answering Stmt. Ex. RX-12-003.)  Upon completion of its resales, Respondent prepared the following liquidation:

| MANIFEST | | SIZE & COMMODITY | | | | PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 452099 | 42 | CRTN | HASS | 32 | SV | 38.00 | 1,596.00 |
| 452099 | 65 | CRTN | HASS | 36 | SV | 38.00 | 2,470.00 |
| 452099 | 99 | CRTN | HASS | 40 | SV | 38.00 | 3,762.00 |
| 452099 | 994 | CRTN | HASS | 48 | SV | 38.00 | 37,772.00 |
| 452099 | 400 | CRTN | HASS | 60 | SV | 37.00 | 14,800.00 |
| 452099 | 160 | CRTN | HASS | 70 | SV | 31.00 | 4,960.00 |
| | 1,760 | | | | | | $65,360.00 |

Less Expenses:

| PRODUCT PAYMENT | $(29,048.00) |
|---|---|
| INSPECTION | |
| MATERIALS | $(100.00) |
| COOLING | $(528.00) |
| SELLING COMMISSION | $(6,536.00) |
| | $36,212.00 |

TOTAL LIQUIDATION:                                                    $29,148.00

(Answering Stmt. Ex. RX-11-002.)

5.    Complainant prepared invoice number 1, dated December 20, 2017, billing Respondent for the avocados as follows:

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 42 | Avocados 32's | 55.00 | 2,310.00 |
| 65 | Avocados 36's | 55.00 | 3,575.00 |
| 99 | Avocados 40's | 53.00 | 5,247.00 |
| 994 | Avocados 48's | 55.00 | 54,670.00 |
| 400 | Avocados 60's | 41.00 | 16,400.00 |
| 160 | Avocados 70's | 41.00 | 6,560.00 |

**Total**          $88,762.00

(Compl. Ex. 1 at 2.)

Load 2

6. On December 22, 2017, 1,920 cartons of Hass avocados (32's, 36's, 40's, 48's, 60's, and 70's) were inspected at Bland Distributing, in Donna, Texas, and certified as meeting the requirements of the U.S. No. 2 grade on Federal-State Inspection Certificate TX-0283700. (Compl. Ex. 2 at 3.)

7. Respondent assigned lot number SV-002AAP17 to the avocados mentioned in Finding of Fact 6, which it resold between December 28, 2017 and January 19, 2018. (Answering Stmt. Ex. RX-12-004.) Upon completion of its resales, Respondent prepared the following liquidation:

| MANIFEST | | SIZE & COMMODITY | | | | PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 452105 | 879 | CRTN | HASS | 48 | SV | 33.75 | 29,666.25 |
| 452105 | 202 | CRTN | HASS | 48 | SV | 28.75 | 5,807.60 |
| 452105 | 362 | CRTN | HASS | 60 | SV | 29.25 | 10,588.50 |
| 452105 | 151 | CRTN | HASS | 60 | SV | 25.75 | 3,888.25 |
| 452119 | 9 | CRTN | HASS | 32 | SV | 34.00 | 306.00 |
| 452119 | 1 | CRTN | HASS | 32 | SV | 27.75 | 27.75 |
| 452119 | 36 | CRTN | HASS | 36 | SV | 34.00 | 1,224.00 |
| 452119 | 12 | CRTN | HASS | 36 | SV | 24.75 | 297.00 |
| 452119 | 60 | CRTN | HASS | 40 | SV | 32.75 | 1,965.00 |
| 452119 | 22 | CRTN | HASS | 40 | SV | 23.75 | 522.50 |
| 452119 | 139 | CRTN | HASS | 70 | SV | 23.75 | 3,301.25 |
| 452119 | 46 | CRTN | HASS | 70 | SV | 22.75 | 1,046.50 |
| 454633 | 2 | CRTN | HASS | 32 | SV | 19.00 | 38.00 |
| | 1,921 | | | | | | $58,678.50 |

Less Expenses:

| | | |
|---|---|---|
| PRODUCT PAYMENT | $(28,500.00) | |
| COOLING | $(576.30) | |
| SELLING COMMISSION | $(5,867.92) | |
| | $(34,944.22) | |

TOTAL LIQUIDATION: $23,734.28

(Answering Stmt. Ex. RX-11-003.)

8. Complainant prepared invoice number 2, dated December 27, 2017, billing Respondent for the avocados as follows:

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | # 1 Avocados | | |
| | Avocados | 0.00 | 0.00 |
| 9 | Avocados 32's | 55.00 | 495.00 |
| 36 | Avocados 36's | 55.00 | 1,980.00 |
| 60 | Avocados 40's | 53.00 | 3,180.00 |
| 879 | Avocados 48's | 55.00 | 48,345.00 |
| 362 | Avocados 60's | 41.00 | 14,842.00 |
| 139 | Avocados 70's | 39.00 | 5,421.00 |
| | | | |
| | # 2 Avocados | | |
| 3 | Avocados 32's | 45.00 | 135.00 |
| 12 | Avocados 36's | 45.00 | 540.00 |
| 21 | Avocados 40's | 43.00 | 903.00 |
| 202 | Avocados 48's | 45.00 | 9,090.00 |
| 151 | Avocados 60's | 31.00 | 4,681.00 |
| 46 | Avocados 70's | 29.00 | 1,334.00 |

# Total          $90,946.00

(Compl. Ex. 1 at 4.)

### Load 3

9.     On January 3, 2018, 1,716 cartons of Hass avocados (32's, 36's, 40's,

48's, 60's, 70's, and 84's) were inspected at Bland Distributing, in Donna, Texas, and

certified as meeting the requirements of the U.S. No. 2 grade on Federal-State Inspection

Certificate TX-0280725.  (Compl. Ex. 2 at 4.)

10.     Respondent assigned lot number SV003AAP17 to the avocados mentioned

in Finding of Fact 9, which it resold between January 9 and 19, 2018.  (Answering Stmt.

Ex. RX-12-005.)  Upon completion of its resales, Respondent prepared the following

liquidation:

| MANIFEST | | SIZE & COMMODITY | | | | PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 452115 | 22 | CRTN | HASS | 32 | SV | 13.68 | 300.96 |
| 452115 | 36 | CRTN | HASS | 36 | SV | 13.68 | 492.48 |
| 452115 | 628 | CRTN | HASS | 48 | SV | 8.68 | 5,451.04 |
| 452115 | 57 | CRTN | HASS | 48 | SV | 8.68 | 494.76 |
| 452115 | 367 | CRTN | HASS | 60 | SV | 8.68 | 3,185.56 |
| 452115 | 61 | CRTN | HASS | 60 | SV | 8.68 | 529.48 |
| 452115 | 157 | CRTN | HASS | 70 | SV | 5.68 | 891.76 |
| 452115 | 61 | CRTN | HASS | 70 | SV | 5.68 | 346.48 |
| 452115 | 150 | CRTN | HASS | 84 | SV | 5.68 | 852.00 |
| 453036 | 4 | CRTN | HASS | 32 | SV | 8.00 | 32.00 |
| 453036 | 9 | CRTN | HASS | 36 | SV | 8.00 | 72.00 |
| 453036 | 75 | CRTN | HASS | 40 | SV | 8.00 | 600.00 |

| 453036 | 9 | CRTN | HASS | 40 | SV | 8.00 | 72.00 |
|--------|---|------|------|----|----|----|-------|
| 453036 | 80 | CRTN | HASS | 70 | SV | 5.00 | 400.00 |
| | 1,716 | | | | | | $13,720.52 |

Less Expenses:

| | | |
|---|---|---|
| PRODUCT PAYMENT | $(20,000.00) | |
| COOLING | $(514.80) | |
| SELLING COMMISSION | $(1,372.07) | |
| | $(21,886.87) | |
| TOTAL LIQUIDATION: | | $(8,166.35) |

(Answering Stmt. Ex. RX-11-004.)

11.     Complainant prepared invoice number 3, dated January 3, 2018, billing

Respondent for the avocados as follows:

| Quantity | Description | Rate | Amount |
|---------|-------------|------|--------|
| | # 1 Avocados | 0.00 | 0.00 |
| 22 | Avocados 32's | 55.00 | 1,210.00 |
| 36 | Avocados 36's | 55.00 | 1,980.00 |
| 75 | Avocados 40's | 53.00 | 3,975.00 |
| 628 | Avocados 48's | 47.00 | 29,516.00 |
| 367 | Avocados 60's | 41.00 | 15,047.00 |
| 237 | Avocados 70's | 39.00 | 9,243.00 |
| 150 | Avocados 84's | 28.00 | 4,200.00 |
| | # 2 Avocados | | |
| 4 | Avocados 32's | 45.00 | 180.00 |
| 9 | Avocados 36's | 45.00 | 405.00 |
| 9 | Avocados 40's | 43.00 | 387.00 |
| 67 | Avocados 48's | 37.00 | 2,479.00 |
| 61 | Avocados 60's | 31.00 | 1,891.00 |
| 61 | Avocados 70's | 29.00 | 1,769.00 |

**Total**        $72,282.00

(Compl. Ex. 1 at 6.)

Load 4

12.     On January 10, 2018, 1,716 cartons of Hass avocados (48's, 60's, 70's,

and 84's) were inspected at Bland Distributing, in Donna, Texas, and certified as meeting

the requirements of the U.S. No. 2 grade on Federal-State Inspection Certificate TX-

0280535.  (Compl. Ex. 2 at 5.)

13.     Respondent assigned lot number SV-0023AAP18 to the avocados

mentioned in Finding of Fact 12, which it resold between January 19 and 22, 2018.

(Answering Stmt. Ex. RX-12-006.)  Upon completion of its resales, Respondent prepared

the following liquidation:

| MANIFEST | | SIZE & COMMODITY | | | | PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 452118 | 442 | CRTN | HASS | 48 | SV | 16.00 | 7,072.00 |
| 452118 | 240 | CRTN | HASS | 60 | SV | 6.00 | 1,200.00 |
| 452118 | 240 | CRTN | HASS | 70 | SV | 6.00 | 1,440.00 |
| 452118 | 160 | CRTN | HASS | 84 | SV | 12.00 | 1,920.00 |
| 452120 | 113 | CRTN | HASS | 48 | SV | 19.50 | 2,203.50 |
| 453034 | 80 | CRTN | HASS | 48 | SV | 19.00 | 1,520.00 |
| 453034 | 240 | CRTN | HASS | 60 | SV | 10.00 | 2,400.00 |
| 453034 | 80 | CRTN | HASS | 70 | SV | 10.00 | 800.00 |
| 453035 | 80 | CRTN | HASS | 48 | SV | 20.50 | 1,640.00 |
| 453043 | 85 | CRTN | HASS | 48 | SV | 8.00 | 680.00 |
| | 1,760 | | | | | | $20,875.50 |

Less Expenses:
| | | |
|---|---|---|
| PRODUCT PAYMENT | $(30,000.00) | |
| COOLING | $(528.00) | |
| SELLING COMMISSION | $(2,087.55) | |
| | $(32,615.55) | |
| TOTAL LIQUIDATION: | | $(11,740.05) |

(Answering Stmt. Ex. RX-11-005.)

14.     Complainant prepared invoice number 4, dated January 11, 2018, billing

Respondent for the avocados as follows:

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | # 1 Avocados | | |
| 800 | Avocados 48's | 41.00 | 32,800.00 |
| 240 | Avocados 60's | 35.00 | 8,400.00 |
| 240 | Avocados 70's | 35.00 | 8,400.00 |
| 160 | Avocados 84's | 24.00 | 3,840.00 |
| | # 2 Avocados | | |
| 240 | Avocados 60's | 25.00 | 6,000.00 |
| 80 | Avocados 70's | 25.00 | 2,000.00 |

**Total**      $61,440.00

(Compl. Ex. 1 at 8.)

Load 5

15.    On January 10, 2018, 1,760 cartons of Hass avocados (32's, 36's, 40's, 48's, and 60's) were inspected at Bland Distributing, in Donna, Texas, and certified as meeting the requirements of the U.S. No. 2 grade on Federal-State Inspection Certificate TX-0281308. (Compl. Ex. 2 at 6.)

16.    Respondent assigned lot number SV-004AAP18 to the avocados mentioned in Finding of Fact 15, which it resold between January 19 and 22, 2018. (Answering Stmt. Ex. RX-12-007.) Upon completion of its resales, Respondent prepared the following liquidation:

| MANIFEST | | SIZE & COMMODITY | | | | PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 452118 | 80 | CRTN | HASS | 32 | SV | 21.00 | 1,680.00 |
| 452118 | 171 | CRTN | HASS | 36 | SV | 22.00 | 3,762.00 |
| 452118 | 267 | CRTN | HASS | 60 | SV | 5.00 | 1,335.00 |
| 452120 | 310 | CRTN | HASS | 40 | SV | 27.50 | 8,525.00 |
| 452120 | 400 | CRTN | HASS | 48 | SV | 19.50 | 7,800.00 |
| 453034 | 239 | CRTN | HASS | 48 | SV | 12.00 | 2,868.00 |
| 453035 | 240 | CRTN | HASS | 48 | SV | 20.50 | 4,920.00 |
| 453043 | 53 | CRTN | HASS | 48 | SV | 8.00 | 424.00 |
| | 1,760 | | | | | | $31,314.00 |

|  | Less Expenses: | | |
|---|---|---|---|
| | PRODUCT PAYMENT | $(20,000.00) | |
| | COOLING | $(528.00) | |
| | SELLING COMMISSION | $(3,131.40) | |
| | | $(23,659.40) | |
| TOTAL LIQUIDATION: | | | $7,654.60 |

(Answering Stmt. Ex. RX-11-006.)

17.    Complainant prepared invoice number 5, dated January 11, 2018, billing Respondent for the avocados as follows:

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | # 1 Avocados | | |
| 80 | Avocados 32's | 45.00 | 3,600.00 |
| 171 | Avocados 36's | 44.00 | 7,524.00 |
| 309 | Avocados 40's | 45.00 | 13,905.00 |
| 693 | Avocados 48's | 39.00 | 27,027.00 |
| 267 | Avocados 60's | 35.00 | 9,345.00 |
| | | | |
| | # 2 Avocados | | |
| 1 | Avocados 40's | 35.00 | 35.00 |
| 239 | Avocados 48's | 29.00 | 6,931.00 |

**Total**        $68,367.00

(Compl. Ex. 1 at 10.)

### Load 6

18.    On January 15, 2018, 1,995 cartons of Hass avocados (32's, 36's, 40's, 48's, 60's, 70's and 84's) were inspected at Bland Distributing, in Donna, Texas, and certified as meeting the requirements of the U.S. No. 2 grade on Federal-State Inspection Certificate TX-0274670. (Compl. Ex. 2 at 7.)

19.    Respondent assigned lot number SVF-005AAP17 to the avocados mentioned in Finding of Fact 18, which it resold on January 19, 2018. (Answering Stmt. Ex. RX-12-008.) Upon completion of its resales, Respondent prepared the following liquidation:

| MANIFEST | | SIZE & COMMODITY | | | | PRICE | TOTAL |
|---|---|---|---|---|---|---|---|
| 452120 | 67 | CRTN | HASS | 32 | SV | 24.50 | 1,641.50 |
| 452120 | 53 | CRTN | HASS | 36 | SV | 31.50 | 1,669.50 |
| 452120 | 113 | CRTN | HASS | 40 | SV | 27.50 | 3,107.50 |
| 452120 | 320 | CRTN | HASS | 60 | SV | 22.50 | 7,200.00 |
| 452120 | 111 | CRTN | HASS | 70 | SV | 19.50 | 2,164.50 |
| 452120 | 113 | CRTN | HASS | 84 | SV | 10.50 | 1,186.50 |
| 453034 | 19 | CRTN | HASS | 32 | SV | 13.00 | 247.00 |
| 453034 | 29 | CRTN | HASS | 36 | SV | 13.00 | 377.00 |
| 453034 | 46 | CRTN | HASS | 40 | SV | 13.00 | 598.00 |
| 453034 | 1 | CRTN | HASS | 48 | SV | 19.00 | 19.00 |
| 453034 | 101 | CRTN | HASS | 48 | SV | 12.00 | 1,212.00 |
| 453034 | 134 | CRTN | HASS | 60 | SV | 10.00 | 1,340.00 |
| 453034 | 35 | CRTN | HASS | 70 | SV | 10.00 | 350.00 |
| 453035 | 800 | CRTN | HASS | 48 | SV | 20.50 | 16,400.00 |
| 454633 | 1 | CRTN | HASS | 36 | SV | 19.00 | 19.00 |
| 454633 | 52 | CRTN | HASS | 48 | SV | 19.00 | 988.00 |

|  |  |
|---|---|
| 1,995 | $38,519.50 |

Less Expenses:
|  |  |  |
|---|---|---|
| COOLING | $(598.50) | |
| SELLING COMMISSION | $(3,851.95) | |
|  | $(4,450.45) | |
| TOTAL LIQUIDATION: | | $34,069.05 |

(Answering Stmt. Ex. RX-11-007.)

20. Complainant prepared invoice number 6, dated January 11, 2018, billing

Respondent for the avocados as follows:

| Quantity | Description | Rate | Amount |
|---|---|---|---|
|  | # 1 Avocados | | |
| 67 | Avocados 32's | 43.00 | 2,881.00 |
| 53 | Avocados 36's | 43.00 | 2,279.00 |
| 113 | Avocados 40's | 40.00 | 4,520.00 |
| 853 | Avocados 48's | 33.00 | 28,149.00 |
| 320 | Avocados 60's | 36.00 | 11,520.00 |
| 111 | Avocados 70's | 33.00 | 3,663.00 |
| 113 | Avocados 84's | 24.00 | 2,712.00 |
|  | # 2 Avocados | | |
| 19 | Avocados 32's | 33.00 | 627.00 |
| 30 | Avocados 36's | 33.00 | 990.00 |
| 46 | Avocados 40's | 30.00 | 1,380.00 |
| 101 | Avocados 48's | 23.00 | 2,323.00 |
| 134 | Avocados 60's | 26.00 | 3,484.00 |
| 35 | Avocados 70's | 23.00 | 805.00 |

**Total**        $65,333.00

(Compl. Ex. 1 at 12.)

21. The informal complaint was filed on September 30, 2019, which is within

nine months from the date the cause of action accrued.

## Conclusions

This dispute concerns Respondent's liability for six truckloads of avocados

received from Complainant. Complainant states Respondent purchased the avocados at

the agreed USDA market price of $447,130.00 but has since paid Complainant only

$228,470.02 of this amount, leaving a balance due Complainant of $218,659.98. (Compl.

¶¶ 4, 7.) Respondent asserts to the contrary that the parties agreed Respondent would

market and sell Complainant's avocadoes on a consignment basis without guaranteed prices, and that Respondent would advance certain sums to Complainant and remit the net sales proceeds to Complainant after deducting for advance repayment, materials, cooling and a ten percent commission. (Answer and Counterclaim ¶ 4.)

Where the parties put forth affirmative but conflicting allegations with respect to the terms of the contract, the burden rests upon each to establish its allegation by a preponderance of the evidence. *Vernon C. Justice v. Eastern Potato Dealers of Maine, Inc.*, 30 Agric. Dec. 1352, 1356 (1971); *Harland W. Chidsey Farms v. Bert Guerin*, 27 Agric. Dec. 384, 386 (1968). Complainant relies primarily upon the unsworn declaration of its former Controller, Erwin Bartel, to substantiate its contentions with respect to the terms of its agreement with Respondent. In his declaration, Mr. Bartel states he negotiated the agreement concerning the subject avocados with Respondent's David Ollivier, and that he and Mr. Ollivier agreed on the following terms: (1) avocados would be shipped FOB Texas, where ownership of the avocados would be taken by Respondent; (2) Respondent would receive a 10% discount on the USDA price at the time of acceptance; and (3) Respondent would pay 35% up front for each load, with the remainder to be paid within 30 days. (Opening Stmt. Declaration of Erwin Bartel ¶ 1.)

Mr. Bartel states he was in constant email contact with Respondent concerning the avocados in question, and in support of this contention Mr. Bartel references Opening Statement Exhibits 1-3. Opening Statement Exhibit 1 consists of email messages exchanged between Mr. Bartel and Respondent's Mike Huston on October 26 and 27, 2016. The messages concern Del Monte's requirements for avocados and the delivery

locations for the avocados. There is no mention in these messages of any agreement between the parties for the consignment or sale of the subject avocados.

Opening Statement Exhibit 2 consists of email messages exchanged between Mr. Bartel and Respondent's David Ollivier, Dylan Lam, and Mike Huston between December 12, 2017, and January 25, 2018, as set forth below:

From Mr. Bartel to Mr. Ollivier, Mr. Lam, and Mr. Huston on December 12, 2017:
Sorry, today is a holiday in Mexico so they won't pack until tomorrow. As soon as we get it, we will forward to you. Should arrive at port Friday by noon.

(Opening Stmt. Ex. 2A.)

From Mr. Bartel to Mr. Ollivier, Mr. Lam, and Mr. Huston on December 12, 2017:
Here are some pictures of the packing. I guess they are packing today. Will get you the packout as soon as we get them.

(Opening Stmt. Ex. 2B.)

From Mr. Bartel to Mr. Ollivier on December 20, 2017:
The first load arrived and I understand it was passed inspection in good order. 50% of Funds should be wired today. Here is the information if you misplaced it.

…

(Opening Stmt. Ex. 2D.)

From Mr. Bartel to Mr. Ollivier on December 21, 2017:
When this morning will you be transferring funds to Sun Valley Farms, LLC account for the first load. 50% less your commission. The second load should be arriving today.

(Opening Stmt. Ex. 2E.)

From Mr. Bartel to Mr. Ollivier on December 26, 2017:
Any lot report on the Load that arrived on 12/22/2017?

(Opening Stmt. Ex. 2F.)

From Mr. Bartel to Mr. Lym on December 27, 2017:
Any Lot Report from yesterdays [sic] shipment? Transfer of funds today?

(Opening Stmt. Ex. 2G.)

<u>From Mr. Bartel to Mr. Ollivier, Mr. Lym, and Mr. Huston on December 27, 2017:</u>
Will we receive a lot report and fund transfer today for the load shipped yesterday?

(Opening Stmt. Ex. 2H.)

<u>From Mr. Lym to Mr. Bartel, Mr. Ollivier, and Mr. Huston on December 27, 2017:</u>
Erwin please call me at the office ASAP

(Opening Stmt. Ex. 2H.)

<u>From Mr. Huston to Mr. Bartel on December 28, 2017:</u>
What's next w/ avocado loads?

(Opening Stmt. Ex. 2C.)

<u>From Mr. Bartel to Mr. Lym on December 28, 2017:</u>
Do we have a Lot Report on the 2nd load?  1,920 boxes

(Opening Stmt. Ex. 2H.)

<u>From Mr. Bartel to Mr. Ollivier and Mr. Lym on January 8, 2018:</u>
What is the status of payment on the 1st load?
What is the status of advance payment on Load #3 and #4?
Do you have a lot report on Load #3?

(Opening Stmt. Ex. 2I.)

<u>From Mr. Ollivier to Mr. Bartel on January 8, 2018:</u>
First Load -We shipped on the 20th - So final Payment will be around the 20th of
January-Third load just shipped - I will pay today half – Don't know when the forth
[sic] is coming?

(Opening Stmt. Ex. 2J.)

<u>From Mr. Bartel to Mr. Ollivier on January 8, 2018:</u>
The 4th load is being shipped this morning.  I thought it went last week.

(Opening Stmt. Ex. 2J.)

<u>From Mr. Bartel to Mr. Lym on January 10, 2018:</u>
Load # 5 is at the border.  I sent you information on that load yesterday.

(Opening Stmt. Ex. 2K.)

From Mr. Bartel to Mr. Ollivier and Mr. Lym on January 11, 2018:
We need funds wired this morning for the balance of advance on Load # 3, advance on Load # 4 and final payment on Load # 1.

(Opening Stmt. Ex. 2L.)

From Mr. Bartel to Mr. Ollivier, Mr. Lym, and Mr. Huston on January 11, 2018:
Thank you for the $30,000.00. Load #6 is being shipped tomorrow morning and two loads will come in next week. We need the balance of the advance on Load # 3 and the advance on Load # 5 as soon as possible. Also, settlement on Load # 1 as soon as you can. The news says that 6,700 acres of avocado trees burned in California. I appreciate all the help you can give us.

(Opening Stmt. Ex. 2M.)

From Mr. Bartel to Mr. Ollivier on January 16, 2018:
Will you be sending an advance on Load # 5 today?

(Opening Stmt. Ex. 2O.)

From Mr. Bartel to Mr. Ollivier on January 16, 2018:
I need to make a payment today on Load # 7 and advance on Load # 5 would be appreciated. I believe Friday is 30 days on the first load but if final payment could be made a day or two early, that to [sic] would be appreciated. Thank you for any help you can give.

(Opening Stmt. Ex. 2N.)

From Mr. Bartel to Mr. Ollivier and Mr. Lym on January 25, 2018:
Due on Load # 1 - $29,048.00   Due on Load # 2 - $25,798.06   Please wire funds today.

(Opening Stmt. Ex. 2P.)

Opening Statement Exhibit 3 includes several additional email messages exchanged between Complainant's Edwin Bartel and Respondent's David Ollivier, Dylan Lym and Mike Huston between December 21, 2017, and January 31, 2018, as set forth below:

From Mr. Bartel to Mr. Ollivier on December 21, 2017:

Sun Valley Farms, LLC - Partnership

Invoice 1   Date 12/20/17   Amount Due $88,960.00

Dear Customer:

Your Estimated invoice-1 for 88,960.00 is attached.


Sincerely,
Sun Valley Farms, LLC - Partnership

661-725-0715

(Opening Stmt. Ex. 3A.)

From Mr. Ollivier to Mr. Bartel on December 21, 2017:
Erwin - I will be forwarding what we sold this load for - its [sic] not close to what this invoice reflects - I will be sending lot report shortly

Wire is on its way

(Opening Stmt. Ex. 3A.)

From Mr. Bartel to Mr. Ollivier on December 21, 2017:
When you send the lot report, will it show where the avocados were sold. We need to know that. Based upon the wire amount, we are concerned as to the market. We expected much more from this load.

(Opening Stmt. Ex. 3A.)

From Mr. Bartel to Mr. Lym, Mr. Ollivier and Mr. Huston on January 10, 2018:
Following up with our conversation yesterday with you, Jerad and I. We emphasized the need for communication. We need the projected sales prices each week on avocados. Upon receipt of a load in Texas that meets USDA Inspection, Western Veg Produce will advance Sun Valley, LLC 50% of the projected sales price. Sun Valley Farms, LLC will be sent a lot sales report with delivery destination immediately after the Load is shipped out. Final settlement will be made on sales in 15 - 21 days after shipment. We need accurate accounting of sales with the guideline being USDA prices as a base. All sales will be fob, not open. Sun-Valley Farms, LLC will forward all documents to Western Veg Produce upon receipt from Grower, Packer, Shipper, Port of Entry, Inspection, Etc. Per our agreement, 10% is more than a fair profit for structured Funding Agreement.

(Opening Stmt. Ex. 3B.)

From Mr. Lym to Mr. Bartel on January 11, 2018:
We are wiring the advance on load #4 today. I remember the agreement being that we would make final payments on loads at 30 days; not 15-21.

(Opening Stmt. Ex. 3C.)

<u>From Mr. Bartel to Mr. Lym on January 11, 2018:</u>
Any additional advance on Load # 3?

(Opening Stmt. Ex. 3C.)

<u>From Mr. Bartel to Mr. Lym on January 22, 2018:</u>
Good Afternoon!  Received your e-mail from Saturday.  The operating cost that we
gave you is less than 50% of our cost so your estimated projections are well below
our costs.  The fruit that we are receiving at the Texas Cold Storage is quality fruit,
passes USDA inspection and has also been passing the pressure test.  We follow
PACA, USDA Market and Market Enforcement Regulations.  The fruit is FOB Texas
and not on an open market with protection.  Your report of sales is not acceptable.
Your projected estimates are $10.00 - $15.00 below USDA Market Report prices.
Sun Valley Farms, LLC pays Western Veg Produce 10% for funding and quality sales
of its product, which we have to report to our Affiliates, Associates and Board
Members.

(Opening Stmt. Ex. 3D.)

<u>From Mr. Ollivier to Mr. Bartel on January 26, 2018:</u>
Erwin - We are not in a position to wire any more money until we get pricing back
from the last loads that were sent out - I am hoping Monday we have pricing.  I have
sent you 130k and we have not received payment on any of the loads yet - should be
coming shortly.  We will review on Monday and see what we can do.

(Opening Stmt. Ex. 3E.)

<u>From Mr. Bartel to Mr. Ollivier on January 26, 2018:</u>
The terms of agreement we have with Western Veg Produce is that once you received
the product at the Texas Cold Storage and it cleared proper inspection, you would
advance 50% of sales FOB Texas.  The final payment on each load would be made in
30 days from shipment per PACA Regulations.  That means that we should receive
final payment on Load # 1 and Load # 2, as they are both beyond 30 days.  All loads
past inspection and pressure prior o [sic] shipment out of the Texas Cold Storage.
Attached are invoices based upon the USDA Market, Dallas, Texas, dated according
to inspection dates.

(Opening Stmt. Ex. 3E.)

<u>From Mr. Bartel to Mr. Ollivier and Mr. Lym on January 31, 2018:</u>
We don't understand about problems as we have not been given any evidence of
problems, just been told there are problems.  All the fruit made good arrival at the
Texas Cold Storage and made USDS [sic] Inspection.  A lot of it was also pressure

tested at the Texas Cold Storage and passed. These avocados were all sold FOB, Texas Cold Storage, not on an open market. We have no idea where the fruit went or how it arrived. Each load represents it's [sic] own lot and is not part of a pool. We are now told no further payments will be made until all the product numbers are available. We were also to be given weekly sales projection and were never given any. There has been no communication. This is not acceptable and we will pursue alternative action to resolve this matter.

(Opening Stmt. Ex. 3F.)

Complainant also submitted a sworn Opening Statement signed by its owner and president, Andrew Sanders. Mr. Sanders states Respondent sent a consignment letter backdated to 2016 which was never seen by Complainant until after the sixth and final load was already delivered and accepted. (Opening Stmt. at 2.) Mr. Sanders states further that the letter is contrary to the agreement reached by the parties prior to the six loads being sent and is also contrary to the emails that went back and forth between the parties, especially the emails from Erwin Bartel on behalf of Complainant. (Opening Stmt. at 2.) In addition, Mr. Sanders states the fact that advances were being made by Respondent also belies a consignment situation. (Opening Stmt. at 2.) Mr. Sanders states emails with invoices attached were sent by Mr. Bartel to Respondent and these documents were not met with any objections at the time or any assertion that the agreement involved a consignment arrangement. (Opening Stmt. at 2.)

In response to the statements and evidence presented by Complainant, Respondent submitted affidavit testimony from its president, David Ollivier, and from its former salesperson, Dylan Lym. Mr. Ollivier states that while the transactions actually occurred December 2017 through January 2018, they were years in the making. (Answering Stmt. Affidavit of David Ollivier ¶ 5.) Mr. Ollivier states Jerad Sanders, who is listed as the Managing Member and General Manager of Complainant in the Produce

Blue Book, approached him sometime in 2016 about marketing his avocados. (Answering Stmt. Affidavit of David Ollivier ¶ 8.) Mr. Ollivier states he has known Jerad Sanders for over 20 years, and that Respondent marketed his grapes from 2009 to 2012, when he had a company called Jerad R. Sanders Farming, Inc. (Sanders Farming), which has since dissolved. (Answering Stmt. Affidavit of David Ollivier ¶ 8.)

Mr. Ollivier states he and Jerad Sanders always had consignment sales agreements, wherein Respondent was given full marketing authority. (Answering Stmt. Affidavit of David Ollivier ¶ 8.) Mr. Ollivier states Respondent advanced money to Sanders Farming for harvesting, cooling and materials needs, and that those advances and a 10% commission would be deducted from the sales proceeds remitted to Sanders Farming. (Answering Stmt. Affidavit of David Ollivier ¶ 8.) Each year from 2009 to 2012, Mr. Ollivier states Respondent and Sanders Farming entered into a series of written agreements to memorialize the terms. (Answering Stmt. Affidavit of David Ollivier ¶ 8.)

Mr. Ollivier states it was his business relationship with Jerad Sanders and Complainant's Controller, Erwin Bartell, that started the relationship between Complainant and Respondent. (Answering Stmt. Affidavit of David Ollivier ¶ 9.) In August 2016, Mr. Ollivier states that he along with Respondent's salespersons Dylan Lym and Michael Huston met with Complainant's representatives, including Jerad Sanders and Erwin Bartel and their then proposed growers, who were not the growers that Complainant ultimately used for the avocados in dispute. (Answering Stmt. Affidavit of David Ollivier ¶ 9.) Through the next few months, Mr. Ollivier states he had some discussions or brief emails with Mr. Sanders and Mr. Bartel about the avocado

program that Complainant was developing with farmers in Mexico. (Answering Stmt. Affidavit of David Ollivier ¶ 9.)

On or about January 6, 2017, Mr. Ollivier states he sent Mr. Bartel a consignment agreement for his review for the marketing of the avocados. (Answering Stmt. Affidavit of David Ollivier ¶ 11.) On or about January 9, 2017, Mr. Ollivier states Mr. Bartel replied that he was out of town and that he would print the agreement and get back to him tomorrow. (Answering Stmt. Affidavit of David Ollivier ¶ 11.) Copies of the email exchange and the agreement are attached as an exhibit to Respondent's Answering Statement. (Answering Stmt. Ex. RX-8 and 9.) Mr. Ollivier points to paragraph 34 of the consignment agreement, which states:

> 34. **Shipper's Acceptance.** If Shipper's Fruit is delivered to WVPI after receipt of this Agreement, Shipper will be deemed to have acquiesced to the terms of this Agreement, regardless of whether either or both parties execute and return the Agreement.

(Answering Stmt. Affidavit of David Ollivier ¶ 12.) Mr. Ollivier states the consignment agreement provided for a 10% commission on the sales prices plus cooling costs and a harvest advance of 50% of the sales price less deductions, which are the same terms repeated and repeated by both parties in multiple emails. (Answering Stmt. Affidavit of David Ollivier ¶ 15.)

Throughout 2017, Mr. Ollivier states he would sometimes receive calls from Mr. Bartel or Mr. Sanders to keep in touch and to let him know that they were still interested in importing avocados from Mexico. (Answering Stmt. Affidavit of David Ollivier ¶ 16.) In mid-December 2017, Mr. Ollivier states he received a sudden telephone call from Mr. Bartel to inform him that Complainant had a load of avocados at the border. (Answering

Stmt. Affidavit of David Ollivier ¶ 17.) The subject six truckloads, Mr. Ollivier states,
were subsequently delivered by Complainant to Donna, Texas from December 20, 2017
to January 15, 2018. (Answering Stmt. Affidavit of David Ollivier ¶ 17.)

In response to Complainant's assertion that the advances made by Respondent are
not indicative of a consignment arrangement, Mr. Ollivier states that since the final
prices of a consignment sale are unknown, marketers like Respondent typically
advance a portion of the expected sales proceeds to a grower or importer to cover
harvesting and shipping costs. (Answering Stmt. Affidavit of David Ollivier ¶ 6.) After
the final sales are complete, Mr. Ollivier states the marketer provides an account of sale
and remits sales proceeds, if any, to the grower or importer. (Answering Stmt. Affidavit
of David Ollivier ¶ 6.)

Mr. Ollivier states if the transactions were truly F.O.B. Texas, as Complainant
purports, then Respondent would have issued purchase orders, received and accepted the
produce, and then Complainant would have invoiced Respondent for the F.O.B. Texas
price at the time of the alleged acceptance in Texas. (Answering Stmt. Affidavit of David
Ollivier ¶ 6.) Mr. Ollivier states none of that happened. (Answering Stmt. Affidavit of
David Ollivier ¶ 6.) Rather, Mr. Ollivier states Respondent inspected the avocados and
agreed to market them, and upon inspection, Respondent estimated the projected sales
and advanced up to 50% to Complainant. (Answering Stmt. Affidavit of David Ollivier ¶
6.)

Mr. Ollivier asserts Complainant's words are contradicted by its actions and by
industry norms. (Answering Stmt. Affidavit of David Ollivier ¶ 7.) Specifically, Mr.
Ollivier states that while Complainant insists that it sold produce to Respondent on a

fixed F.O.B. Texas basis, Complainant constantly sought sales return information from Respondent, whereas if the transactions were truly F.O.B. Texas, Complainant would just have simply invoiced Respondent for an agreed fixed price and not be concerned with what prices Respondent could fetch or the amount of Respondent's commissions. (Answering Stmt. Affidavit of David Ollivier ¶ 7.) Mr. Ollivier states Complainant accepted advances, allowed for deductions and commissions, waited for liquidation reports, and waited for sales proceeds remittance, which conduct Mr. Olivier asserts is consistent with a marketing agency relationship on a consignment basis. (Answering Stmt. Affidavit of David Ollivier ¶ 7.)

In his affidavit, Mr. Lym testifies that in August 2016, he sat in a meeting with Respondent's David Ollivier and Mike Horton, as well as Complainant's Jerad Sanders and Erwin Bartel and their then proposed growers, which were not the ultimate growers from whom Complainant shipped avocados to Respondent. (Answering Stmt. Affidavit of Dylan Lym ¶ 4.) Based on the prior relationship between Mr. Sanders, Mr. Bartel and Mr. Ollivier, Mr. Lym states he sensed the meeting was promising and was hopeful that Respondent would market Complainant's imported avocados from Mexico. (Answering Stmt. Affidavit of Dylan Lym ¶ 4.)

Over the next year, Mr. Lym states he did not hear much about Complainant until about mid December 2017, when he learned from Mr. Ollivier that Complainant had an incoming load of avocados. (Answering Stmt. Affidavit of Dylan Lym ¶ 5.) From that point forward, Mr. Lym states he communicated almost daily with Mr. Bartel by email or telephone. (Answering Stmt. Affidavit of Dylan Lym ¶ 5.) Mr. Lym states he also communicated with Mr. Ollivier and Mr. Horton several times a day regarding

Complainant's avocados, as well as other matters. (Answering Stmt. Affidavit of Dylan Lym ¶ 5.)

As Respondent's David Ollivier asserts in his affidavit testimony, Complainant's words are contradicted by its actions. Complainant repeatedly asserts that Respondent agreed to purchase the avocados FOB Texas at the prevailing prices reported by USDA Market News less a 10% "discount"; however, Complainant submitted evidence showing that its Controller, Edwin Bartel, sent multiple email messages to Respondent requesting lot reports and settlement for the avocados. Mr. Bartel also acknowledges in an email message dated January 10, 2017, that the advances paid by Respondent were 50% of the projected sales proceeds, which begs the question as to why Complainant would accept advances based on projected sales proceeds if the amount Respondent agreed to pay for the avocados was predetermined based on prevailing USDA Market News prices. The obvious answer to the question is that the terms of the agreement were as Respondent asserts, i.e., Respondent would advance 50% of the projected sales proceeds, and upon completion of its resales, Respondent would remit the gross resale proceeds, less advance repayment, cooling and materials expenses and a 10% commission.

We have reviewed the consignment agreement submitted by Respondent and find that while it was possible for Complainant to ratify the agreement by shipping product rather than signing the agreement, other wording in the agreement indicates that its applicability is limited to avocados produced during the 2016-2017 season. (Answering Stmt. Ex. RX-9-001.) Since the avocados in question were from the 2017-2018 crop year, we are unable to find that the terms set forth in the written consignment agreement are applicable to the six shipments of avocados in question. As the evidence nevertheless

establishes that the avocados were consigned to Respondent, Respondent's liability to Complainant should be based on the gross proceeds collected from its sales of the avocados, less advance repayment, cooling and materials expenses, and the 10% commission agreed upon between the parties.

Respondent submitted a detailed account of sales for each of the six shipments of avocados in question, as well as copies of its invoices for the sale of the avocados to its customers, and detailed liquidations showing the advances, expenses, and commissions that were deducted from the gross sales. (Answering Stmt. Ex. RX-11, 12, 13.) Those documents show the avocados were sold for gross proceeds totaling $228,468.02. Complainant submitted an accounting crediting Respondent with advances, payments, costs and commissions totaling $228,470.02. (Compl. Ex. 1 at 1.) As Respondent has therefore remitted the full amount owed to Complainant according to the parties' agreement, we find that the Complaint should be dismissed.

Respondent's Counterclaim, which seeks lost commission based on its assertion that Complainant shipped poor quality avocados that sold at reduced prices thereby reducing Respondent's commission, should also be dismissed. Just as the consignor in a consignment transaction is not guaranteed to receive market price for its product,[1] the consignee is not guaranteed a commission based on prevailing market prices. In other words, just as the consignor bears the risk of poor performance by its consignee, the consignee bears the risk that the quality of the product, market conditions, or its own

---

[1] Absent fraud, or some other breach of its fiduciary obligations, a consignee is not liable to a consignor merely because the goods fetched less on resale than the market price or the amount the consignor expected. *Tex-Sun Produce v. International Produce Distributors, Inc.*, 48 Agric. Dec. 1110, 1114 (1989); *Pacific Fruit & Produce Co. v. Wm. C. Denny, Inc.*, 31 Agric. Dec. 1420, 1423 (1972); *Monarch Produce v. Pearl*, 15 Agric. Dec. 1250, 1254 (1956); *Haven Citrus Sales v. Dietz & Co.*, 15 Agric. Dec. 1091, 1094-95 (1956).

sales performance, will negatively impact the sales price from which it derives its commission. Accordingly, we find no merit in Respondent's contention that it entitled to receive more than the agreed upon amount of 10% of the gross sales as commission.

### Order

The Complaint is dismissed.

The Counterclaim is dismissed.

Copies of this Order shall be served upon the parties.

Done at Washington, D.C.
October 22, 2020

Judge Bobbie J. McCartney

Digitally signed by Judge Bobbie J. McCartney

Bobbie J. McCartney
Judicial Officer
Office of the Secretary

 **Agricultural
Marketing
Service**

1400 Independence Ave., SW
Room 1510-S, Stop 0242
Washington, D.C.  20250-0242

October 22, 2020

In reply refer to:
File PACA W-R-2018-149

Sun Valley Farms LLC
32177 Woollomes Ave
Delano, CA  93215

        and

Western Veg Produce Inc.
19325 Flightpath Way
Bakersfield, CA  93308

Dear Sir/Madam:

Re:  Sun Valley Farms LLC v. Western Veg Produce Inc.

Enclosed is the order issued on October 22, 2020, in the file referenced above under the
Perishable Agricultural Commodities Act (PACA).

If you wish to petition this order, it must be submitted within 20 days from receipt of this letter.
If you file an appeal, it must be filed in a United States District Court by November 21, 2020.

You can review your appeal or petition rights by referring to our website at
**www.ams.usda.gov/paca** and clicking on the links **PACA Statute** (for appeals) and
**Administrative Procedures** (for petitions).  If you do not have access to the internet or have
questions regarding this matter, contact our office at (202) 720-2890 or by fax at (202) 690-2815
or by email at PACAdispute@usda.gov.

Sincerely,

JOHN
KOLLER

Digitally signed by
JOHN KOLLER
Date: 2020.10.22
13:06:53 -04'00'

John A. Koller
Chief, Dispute Resolution Branch
PACA Division

Enclosure