# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUN VALLEY FARMS, LLC, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> WESTERN VEG PRODUCE, INC., <br><br> Defendant-Appellee | CASE NO. 1:20-CV-1665 AWI JLT <br><br> ORDER ON DEFENDANT'S MOTION TO DISMISS <br><br> (Doc. No. 8) |

This is an appeal under 7 U.S.C. § 499g(c) of the Perishable Agricultural Commodities Act ("PACA") by Plaintiff-Appellant Sun Valley Farms, LLC ("Sun Valley") from a decision by the Secretary of Agriculture. Currently before the Court is Defendant-Appellee Western Veg Produce, Inc.'s ("Western Veg") Rule 12(b)(1) motion to dismiss. For the reasons that follow, Western Veg's motion will be denied.

## **RULE 12(b)(1) FRAMEWORK**

Federal Rule of Civil Procedure 12(b)(1) allows for a motion to dismiss based on lack of subject matter jurisdiction. See Fed. R. Civ. Pro. 12(b)(1). It is a fundamental precept that federal courts are courts of limited jurisdiction. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978); K2 Am. Corp. v. Roland Oil & Gas, 653 F.3d 1024, 1027 (9th Cir. 2011). Limits upon federal jurisdiction, be they "imposed by the Constitution or by Congress, must be neither disregarded or evaded." Owen Equip., 437 U.S. at 374; General Atomic Co. v. United Nuclear Corp., 655 F.2d 968, 968 (9th Cir. 1981). "It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."

Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); K2 Am., 653 F.3d at 1027. Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. See Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014); Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When a defendant challenges jurisdiction facially, all material allegations in the complaint are assumed true, and the court determines whether the factual allegations are sufficient to invoke the court's subject matter jurisdiction. See Leite, 392 F.3d at 362; Safe Air, 373 F.3d at 1039. When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air, 373 F.3d at 1039; see Leite, 749 F.3d at 1121. The court need not presume the truthfulness of the plaintiff's allegations under a factual attack. Wood v. City of San Diego, 678 F.3d 1075, 1083 n.2 (9th Cir. 2011).

**BACKGROUND**

From the Complaint and documents attached thereto, Sun Valley and Western Veg entered into an agreement for the sale of six truckloads of avocados. The avocados were grown in Mexico and then shipped into the United States by Sun Valley. The entry point into the United States was Texas. Upon entry into Texas, Western Veg took position of the avocados. Between December 20, 2017, and January 15, 2018, the parties liquidated six truckloads of avocados.

The dispute between the parties is the nature of their agreement. Sun Valley contends that the agreement was that Sun Valley would sell the avocados to Western Veg F.O.B. Texas,[1] i.e. Western Veg would take ownership of the avocados once they reached Texas. Western Veg contends that the agreement was a consignment agreement whereby it would market and sell the avocados for Sun Valley without guaranteed prices in exchange for a commission and other fees.

---

[1] Under PACA related regulations, "F.O.B." means in relevant part that "the produce quoted or sold is to be placed free on board the boat, car, or other agency of through land transportation at shipping point, in suitable shipping condition . . . and that the buyer assumes all risk of damage and delay in transit not caused by the seller . . . ." 7 C.F.R. § 46.43(i).

Because of the disputed nature of the agreement, Sun Valley contends that Western Veg owes it approximately $219,000.00, while Western Veg contends that it owes Sun Valley nothing.

Sun Valley filed a PACA complaint with the Secretary of Agriculture ("the Secretary") (PACA Docket No. W-R-2018-149) against Western Veg and sought an approximately $219,000 reparation order for the avocados. Western Veg counterclaimed for $30,000 for lost sales, commissions, and profits related to the six truckloads of avocados.

On October 22, 2020, the Secretary issued a Decision and Order. The Secretary found that the agreement between the parties was a consignment agreement, Western Veg had remitted approximately $228,000 to Sun Valley for the six truckloads of avocados, and that Sun Valley was owed no other funds. The Secretary also found that Western Veg's counterclaim for $30,000 was without merit. The Secretary dismissed both Sun Valley's claim and Western Veg's counterclaim without any reparations of any kind (including fees and costs) being awarded to either party.

On November 20, 2020, Sun Valley filed this appeal/complaint pursuant to 7 U.S.C. § 499g(a).

In a letter dated December 4, 2020, the United States Department of Agriculture sent the Court a copy of the administrative record for Sun Valley's PACA complaint. The administrative record was entered on the docket by Court personnel on December 9, 2020.

**DEFENDANT'S MOTION**

*Defendant's Argument*

Western Veg argues that Sun Valley timely filed this appeal/action within the time limits mandated by PACA. However, 7 U.S.C. § 499g(c) requires that in order for an appeal to be effective, the appellant must file a bond that is double the amount of reparation awarded plus interest and costs, including reasonable attorneys' fees. Legislative history makes clear that Congress intended to make an appeal conditional and to provide a means for litigants to recoup their expenses. Sun Valley has posted no bond for costs and fees. The failure to file a bond is a fatal jurisdictional defect that requires dismissal. Further, Western Veg argues that it is entitled to mandatory attorneys' fees under § 499g(c) because it will be a prevailing party.

*Plaintiff's Opposition*

Sun Valley argues that Western Veg is taking a part of the sentence regarding costs and attorneys' fees and attempting to apply it to a producer/seller who was awarded nothing. The statute actually requires a bond where the reparation order involves an order to pay against the buyer of perishable goods. This is confirmed by other parts of § 499g(c) which require that appellant state the grounds on which it relies to defeat the right to recover the damages claimed. Further, § 499g(d) states that unless a licensee against whom a reparation order has been issued shows that it has taken an appeal or made full payment, the licensee's PACA license will be suspended. These sections presume a reparation award against a PACA licensed commission merchant, dealer, or broker. Further, courts recognize that PACA was intended to protect growers and shippers against the sharp and unscrupulous practices of commission merchants, brokers, and dealers. In furtherance of that goal, growers and shippers can get a reparation order from the Secretary against a PACA licensee. If the licensee wishes to appeal the reparation order, the licensee must post a bond. Courts recognize that the bond requirement was intended to discourage frivolous appeals that were taken to avoid timely paying reparations yet also provide the licensee with the benefit of not having its license suspended. Here, no reparations award was issued against any party, and Sun Valley states that it is not a commission merchant, dealer, or broker. Sun Valley argues that to force it to pay a bond in this situation is contrary to the intent of PACA.

*7 U.S.C. § 499g*

In relevant part, § 499g reads:

> (a) If after a hearing [or a without a hearing under certain circumstances] on a complaint made by any person under [7 USCS § 499f][2] . . . the Secretary determines that the commission merchant, dealer, or broker has violated any provision of section [7 USCS § 499b], he shall, unless the offender has already made reparation to the person complaining, determine the amount of damage, if any, to which such person is entitled as a result of such violation and shall make an order directing the offender to pay to such person complaining such amount on or before the date fixed in the order. The Secretary shall order any commission merchant, dealer, or broker who is the losing party to pay the prevailing party, as reparation or additional reparation, reasonable fees and expenses incurred in connection with any such hearing. . . .

---

[2] Any person can complain to the Secretary about an alleged violation of the PACA statutory code of conduct by a commission merchant, dealer, or broker. See 7 U.S.C. § 499f(a); O'Day v. George Arakelian Farms, Inc., 536 F.2d 856, 858 (9th Cir. 1976).

4

. . . .

>(c) Either party adversely affected by the entry of a reparation order[3] by the Secretary may, within thirty days from and after the date of such order, appeal therefrom to the district court of the United States for the district in which said hearing was held . . . . *Such appeal shall not be effective unless within thirty days from and after the date of the reparation order the appellant also files with the clerk a bond in double the amount of the reparation awarded against the appellant conditioned upon the payment of the judgment entered by the court, plus interest and costs, including a reasonable attorney's fee for the appellee, if the appellee shall prevail.* Such bond shall be in the form of cash, negotiable securities having a market value at least equivalent to the amount of bond prescribed, or the undertaking of a surety company on the approved list of sureties issued by the Treasury Department of the United States. The clerk of court shall immediately forward a copy thereof to the Secretary of Agriculture, who shall forthwith prepare, certify, and file in said court a true copy of the Secretary's decision, findings of fact, conclusions, and order in said case, together with copies of the pleadings upon which the case was heard and submitted to the Secretary. . . .
>
>(d) Unless the licensee against whom a reparation order has been issued [has] taken an appeal as herein authorized or has made payment in full as required by such order his license shall be suspended automatically at the expiration of such five-day period until he shows to the satisfaction of the Secretary that he has paid the amount therein specified with interest thereon to date of payment:

7 U.S.C. § 499g(a),(c) (emphasis added), (d).

*Discussion*

Initially, as § 499g(c) makes clear, a party that is adversely affected by the Secretary's reparation order may appeal to a District Court. However, "the appeal is not effective unless the appellant files 'a bond in double the amount of the reparation awarded against the appellant conditioned upon the payment of the judgment entered by the court, plus interest and costs , including a reasonable attorney's fee for the appellee, if the appellee shall prevail.'" O'Day v. George Arakelian Farms, Inc., 536 F.2d 856, 858 (9th Cir. 1976) (quoting 7 U.S.C. § 499g(c)). In fact, the failure to follow the § 499g(c) bond requirement is a jurisdictional defect that requires the dismissal of a § 499g(c) appeal. See Word v. United States CFTC, 924 F.3d 1363, 1368 (11th Cir. 2019); Alphas Co. v. William H. Kopke, Jr., Inc., 708 F.3d 33, 38 (1st Cir. 2013); Chicago Commodities, Inc. v. Commodities Futures Trading Co., 811 F.2d 1262, 1263 (9th Cir. 1987); Miloslavich v. Frutas Del Valle de Guadalupe, S.A., 637 F.Supp. 434, 439 (S.D. Cal. 1986). Given the jurisdictional importance of the § 499g(c) bond requirement, Sun Valley's failure to file

---

[3] The term "reparation order" has been interpreted to mean an order issued under § 799g(a), even if the order denies reparations. See De Lello v. Sacks, 124 F.Supp. 270, 271 (E.D. N.Y. 1954).

5

1 any bond raises significant questions.  However, after review, the Court finds that Sun Valley's
2 failure to post a bond does not deprive the Court of jurisdiction.

3 Section 499g(c) identifies the amount of the bond.  The express language of § 499g(c) sets
4 the amount of a bond at double the amount of the total reparation awarded against the appellant.
5 See 7 U.S.C. § 499g(c) (". . . a bond in double the amount of the reparation awarded against the
6 appellant . . . ."); O'Day, 536 F.2d at 858 (noting that the bond at issue was double the total of the
7 damages found and the costs assessed by the Secretary); Miloslavich, 637 F.Supp. at 439 (holding
8 that a bond was required where costs and attorneys' fees were awarded by the Secretary against
9 the appellant even though no other damages/reparations were awarded).  Section 499g(c)'s bond
10 requirement clearly envisions that there is a reparation award of some kind against the appellant.
11 See 7 U.S.C. § 499g(c).  Because the reparation order in this case awarded no reparations of any
12 kind against Sun Valley (or Western Veg, for that matter), this case is outside the bond
13 requirement's plain language.  Alternatively, double the amount of zero is zero.  Either way, Sun
14 Valley is not required to post a bond.         Western Veg contends that the bond includes
15 attorneys' fees and that Sun Valley's failure to include a bond based on attorneys' fees is a
16 jurisdictional failure.  This argument is based on the following statutory language:  "a bond double
17 the amount of the reparation awarded against the appellant conditioned upon the payment of the
18 judgment entered by the court, plus interest and *costs, including a reasonable attorney's fee for*
19 *the appellee*, if the appellee shall prevail."  7 U.S.C. § 499g(c) (emphasis added).  The problem is
20 that the "costs and attorney's fees" language is part of the condition of the bond.   The condition of
21 the bond does not set the amount of the bond or the constituent numbers that make up the total
22 amount of the bond, rather the condition sets the circumstances under which the bond becomes
23 due or payable.  A "bond" is generally understood to be some form of "written promise to pay
24 money or do some act *if certain circumstances occur* or a certain time elapses; a promise that is
25 *defeasible upon a condition subsequent* . . . ."  BOND, Black's Law Dictionary (11th ed. 2019)
26 (emphasis added).  Therefore, the Court reads the bond requirement of § 499g(c) as being one for
27 double the total amount of a reparation award and that becomes due and payable to the appellee,
28 i.e. conditioned, upon the appellant's failure to pay the judgment, costs, and attorney's fees that

are imposed by the District Court at the conclusion of the appeal. Western Veg is overlooking both the term "condition" and the language that actually sets the amount of the bond, which is double the amount of the reparation awarded against the appellant.

Western Veg cites no cases in which a § 499g appeal was dismissed based on the bond requirement when no reparations, costs, or fees of any kind had been awarded by the Secretary. That is, Western Veg cites no authority that has adopted its interpretation that the total amount of the bond is an amount for potential costs, interests, and fees (which of necessity would be an estimate) *plus* double the Secretary's reparation award. However, in *O'Day* the Ninth Circuit described the § 499g(c) bond at issue in the case. The Secretary concluded that O'Day owed a grower $22,089.80 for twenty truckloads of lettuce. See O'Day, 536 F.2d at 858. The Secretary also awarded costs against O'Day for $997. See id. The Ninth Circuit explained that the applicable bond required for O'Day's appeal under § 499g(c) was $46,173.60, which was "double the [total] amount of the damage award plus [awarded] costs."[4] Id. The Ninth Circuit did not explain that attorneys' fees or interest was to be included in or added to this figure, nor did the Ninth Circuit suggest that the amount of the applicable bond was anything other than double the amount of the total reparation award (which consisted of a damages figure and a cost figure).[5] See id. Therefore, *O'Day*'s description of the applicable bond is contrary to Western Veg's position.

Additionally, the primary purpose of PACA was "to provide a practical remedy to small

---

[4] That is, ($22,089.80 + $997) x 2 = $46,173.60 bond amount.

[5] The Ninth Circuit in *O'Day* dealt with an "as applied" constitutional challenge to the § 499g(c) "double bond" requirement. See O'Day, 536 F.2d at 858-61; see also Alphas Co. v. Dan Tudor & sons Sales, Inc., 679 F.3d 35, 40 n.5 (1st Cir. 2012). "The practical effect of holding a statute unconstitutional 'as applied' is to prevent its future application in a similar context, but not to render it utterly inoperative." Ada v. Guam Society of Obstetricians & Gynecologists, 113 S.Ct. 633 (1992) (Scalia, J., dissenting); see also United States v. McCoy, 323 F.3d 1114, 1132-33 (9th Cir. 2003); Women's Medical Professional Corp. v. Voinovich, 130 F.3d 187, 193 (6th Cir. 1997). The Ninth Circuit held that, because O'Day was financially unable to post the roughly $46,000 double bond, the requirement was unconstitutional as applied to him. See O'Day, 536 F.2d at 861-62. However, the Ninth Circuit held that the statute was constitutional as to O'Day to the extent that a bond, as opposed to a double bond, was required. See id. The matter was remanded for the district court to set a bond which, although not double the total reparation award, was to be the total of the reparation award and reasonably expected costs, interest, and fees of the appellee on appeal. See id. The Ninth Circuit clearly envisioned a bond being set that would protect the award and litigation costs of the appellee, yet was less than double the amount of the total reparation award. See id. at 860-62 & n.4. Additionally, the Court notes that neither party suggests that the double bond requirement is unconstitutional as applied to Sun Valley or in the circumstances of this case. Cf. Myron v. Martin, 670 F.2d 49, 53 (5th Cir. 1982) (holding that a litigant's reliance on *O'Day* and challenge to a statutory bond requirement under 7 U.S.C. § 18(g) that was materially identical to § 499g(c) was misplaced because the litigant was not indigent and had posted the required double bond).

7

1 farmers and growers who were vulnerable to the sharp practices of financially irresponsible and
2 unscrupulous brokers in perishable commodities." Id. at 857-58 (quoting Chidsey v. Guerin, 443
3 F.2d 584, 587 (6th Cir. 1971)).  Congress recognized that buyers and sellers of perishable
4 agricultural products were often hundreds or thousands of miles apart, and that farmers, small
5 shippers, or small cooperatives did not have the time or money to successfully litigate against a
6 commission merchant, dealer, or broker.  Chidsey, 443 F.2d at 588 (citing H.R. Rep. 1041, 71st
7 Cong.2d Sess. at 2 (1930)).  Further, long delays would occur in the adjudication of complaints,
8 and often judgments against a commission merchant, dealer, or broker could not be collected when
9 awarded.  See id.  PACA's complaint, investigative, and reparation process in § 499f and § 499g
10 was intended to "remove the expense and inconvenience of court action to growers."  Id.  With
11 respect to the § 499g(c) bond requirement, the First Circuit has explained:

> To "discourage frivolous appeals" from the [§ 499g(a)] orders of the Secretary, taken simply to delay payment and so "escape the automatic suspension of license provided by the act for nonpayment of a reparation award" until the appeal is decided, H.R. Rep. No. 75-915, at 3 (1937), Congress added the bond requirement to PACA. . . .  The bond requirement in section 499g(c) provides a disincentive to parties seeking to appeal in order to defer their payment obligations for some months or years, while still benefitting from their PACA license in the interim.  See H.R. Rep. No. 75-915, at 3. The requirement also protects the prevailing party from suffering the consequences of any financial deterioration -- including bankruptcy -- experienced by the losing party during the sometimes lengthy appeals process. The bond requirement is critical to the effective operation not only of PACA's complaint process and internal enforcement mechanism, but also to the effective operation of PACA as a whole.

19 Alphas Co. v. Dan Tudor & Sons Sales, Inc., 679 F.3d 35, 39 (1st Cir. 2012).  "The bond
20 requirement ensures the farmer that he will be able collect the judgment and his litigation expenses
21 if the reparation order is upheld.  Thus, the farmer is encouraged to defend the reparation order in
22 the District Court and thereby to help discourage the sharp practices at which [PACA] was
23 aimed."  Chidsey, 443 F.2d at 588.
24    Here, no reparation award of any kind against any party was issued by the Secretary,
25 meaning the Secretary found that no party was injured.  Therefore, there is no chance whatsoever
26 of delaying or deferring any reparation payments, or of a PACA license being suspended in
27 connection with a reparation award, or of an inability to collect a reparation award due to a party's
28 possible financial deterioration during the pendency of an appeal.  Further, the seller/shipper in

this case was Sun Valley and the commission merchant, broker, or dealer against whom a complaint was made was Western Veg. A bond would not encourage Sun Valley to defend anything in court. In fact, the opposite is true. If the Secretary was incorrect in finding that Western Veg did not engage in any "sharp practices" against Sun Valley,[6] the bond requirement is a disincentive for Sun Valley to go to court and attempt to stem those sharp practices. Therefore, the legislative history does not indicate that Congress intended a bond requirement to apply when the reparation order included no reparation award of any kind against any party.

Finally, § 499g(c)'s procedures require the Clerk of the Court to immediately forward to the Secretary a copy of the bond filed. See 7 U.S.C. § 499g(c). After a copy of the bond is sent to the Secretary, the Secretary "shall forthwith prepare, certify, and file in said court a true copy of the Secretary's decision, findings of fact, conclusions, and order in said case, together with copies of the pleadings upon which the case was hear and submitted to the Secretary." Id. That is, once the Secretary receives a copy of the bond from the Court, the Secretary sends the court the administrative record. See id. In this case, no bond was ever filed with the Court. Therefore, the docket reflects that the Clerk never sent the Secretary a copy of any bond or any communication or notification whatsoever. Nevertheless, on December 4, 2020, the Secretary sent the administrative record to the Court, and the administrative record was filed by the Court on December 9, 2020. The fact that the Secretary sent the Court the administrative record without any notification from the Court, and without any evidence that a bond had been posted, suggests that no bond is necessary to appeal a reparation award that is zero.

In sum, because the Secretary awarded no reparations of any kind against Sun Valley, the Court concludes that Sun Valley is not required to file a bond in order to appeal the Secretary's reparation order. Therefore, dismissal of this appeal for lack of jurisdiction is inappropriate.[7]

---

[6] The Court notes that, as part of the *de novo* proceedings in the district court, the factual findings in the Secretary's reparation order are prima facie evidence of the facts at issue. See 7 U.S.C. § 499g(c).

[7] The Court notes that Western Veg's reply spends a great deal of time to arguing that Sun Valley is a commission merchant, broker, or dealer. In support of this argument, Western Veg has filed a request for judicial notice. The Court finds that it is unnecessary to determine at this point whether Sun Valley is or is not a commission merchant, broker, or dealer. The key to resolving this motion is the language of § 499g(c). The Court interprets that section to require a bond that is double the amount of a reparation award, payment of the bond being conditioned on the failure of the appellant to pay a District Court's judgment, costs, interest, and fees entered against the appellant. Since there

## ORDER

Accordingly, IT IS HEREBY ORDERED that Defendant/Appellee's Rule 12(b)(1) motion to dismiss (Doc. No. 8) is DENIED.

IT IS SO ORDERED.

Dated:   April 28, 2021                              _____
                                                     SENIOR DISTRICT JUDGE

---

were no reparations awarded of any kind, a zero dollar bond, which is no bond at all, is required under the plain language of § 499g(c).  Therefore, the Court expresses no opinion about Sun Valley's status as a commission merchant, broker, or dealer, and denies Western Veg's request for judicial notice as irrelevant.  See Ruiz v. City of Santa Maria, 160 F.3d 543, 548 n.13 (9th Cir. 1998); Charles v. Daley, 749 F.2d 452, 463 (7th Cir. 1984).